# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JERALDINE HARTSON,

        Plaintiff,

v.

COMPWEST INSURANCE COMPANY,

        Defendant.

Case No. 1:23-cv-00197-JMB-PJG

Hon. Jane M. Beckering

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>HURWITZ LAW PLLC<br>*Attorneys for Plaintiff*<br>340 Beakes St. STE 125<br>Ann Arbor, MI 48104<br>(844) 487-9489<br>noah@hurwitzlaw.com | Scott R. Knapp (P61041)<br>Brandon C. Hubbard (P71085)<br>Jared A. Christensen (P83052)<br>DICKINSON WRIGHT PLLC<br>*Attorneys for Defendant*<br>123 W. Allegan Street, Suite 900<br>Lansing, MI 48933<br>(517) 371-1730<br>sknapp@dickinsonwright.com<br>bhubbard@dickinsonwright.com<br>jchristensen@dickinsonwright.com |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Per stipulation of the parties pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff Jeraldine Hartson ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her First Amended Complaint against Defendant CompWest Insurance Company ("Defendant"):

## INTRODUCTION

1.    Defendant deliberately flouted the Americans with Disabilities Act of 1991 ("ADA") by blanketly denying medical exemptions from its mandatory COVID-19 policy. Consequently, numerous employees, including Plaintiff, were unlawfully terminated. Plaintiff was denied the ADA's "interactive process" despite Defendant having no logical reason to require

1

vaccination for an employee working remotely.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in San Diego, California.

3. Defendant is a domestic organization with a principal place of business located at 200 N. Grand Avenue, Lansing.

4. Plaintiff's claims arise out of Defendant's violation of the Americans with Disabilities Act of 1991 42 U.S.C. § 12102(1).

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This matter is not subject to arbitration.

7. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

8. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging disability discrimination on February 25, 2022.

9. Plaintiff received her Right to Sue letter from the EEOC on November 28, 2022.

## FACTUAL ALLEGATIONS

10. Plaintiff was employed by Defendant as a Senior Business Development Consultant until her termination effective January 5, 2021.

### Defendant's Mandatory Vaccine Policy

11. Defendant announced a mandatory COVID-19 vaccine policy for "all employees and contractors, including those working remotely" on or about November 1, 2021.

12. Defendant required employees and contractors to be vaccinated by December 8, 2021.

13. Defendant never required visitors or vendors to be vaccinated.

14. The last day for employees to request accommodations to the vaccine mandate was November 11, 2021.

15. The decision whether to grant or deny religious and medical vaccine accommodations to applicants was made less than two (2) weeks later, on November 24, 2021.

16. Employees denied accommodation were automatically placed on unpaid leave of absence from December 9, 2021, until January 5, 2022.

17. Defendant's accommodation process was arbitrary and woefully inconsistent.

18. Defendant terminated approximately 250 employees who requested an accommodation to the COVID-19 vaccine on January 5, 2022.

19. Defendant incentivized employees to retire early in 2020 in order to reduce staffing costs, but Defendant did not have to eliminate jobs in 2021 because it terminated unvaccinated employees.

20. Defendant touts on job recruiting websites that it requires COVID-19 vaccination with "no exemptions."

21. Employees denied accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination.

22. Plaintiff worked remotely.

23. Defendant terminated remote employees such as Plaintiff who remained unvaccinated despite those employees posing no discernible risk to their coworkers.

**Plaintiff's Medical Accommodation Request**

24. Plaintiff has a medical condition that prevents her from receiving the COVID-19 vaccination. Specifically, she has suffered severe allergic reactions from various medications and her physician proscribed her from receiving the COVID-19 vaccine.

25. Plaintiff submitted a medical exemption request for the COVID-19 vaccine on November 1, 2021.

26. Plaintiff's physician stated that Plaintiff "has a medical condition that prohibits receipt of vaccine for C-19.  The vaccine can cause this patient serious disability and/or death if [she] receives the covid-19 vaccine."

27. Plaintiff's disability request sought exemption from the COVID-19 vaccine through November 1, 2023.

28. Defendant denied Plaintiff's exemption request without contacting her physician to request additional information or sending Plaintiff to an independent medical examination.

29. Plaintiff did not receive the vaccine and was subsequently terminated on January 5, 2022.

30. Defendant refused to provide any specific reason for her denial.

31. The accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

32. No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

33. The United States Equal Employment Opportunity Commission tells employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

34. President Daniel J. Loepp announced on or about December 7, 2021: "I want to

thank all employees who are or are in the process to become fully vaccinated and encourage any employee who is not vaccinated to consider doing so."

35.  President Daniel J. Loepp told Defendant's employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation requests and terminating many employees.

36.  Plaintiff was an excellent performer of her job duties.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE

37.  Plaintiff restates the foregoing paragraphs as set forth fully herein.

38.  Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

39.  Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

40.  Defendant was legally required to engage Plaintiff in an interactive process before placing her on involuntary leave and terminating her.

41.  Defendant discriminated against Plaintiff on account of her "actual or perceived" disability when she was placed on involuntary leave and was terminated on January 5, 2022.

42.  Defendant's actions were knowing and willful.

43.  "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. app. § 1630.9.

44.  An employee begins the accommodation process by notifying her employer of her disability; "at that point, an employer's liability is triggered for failure to provide

5

accommodations." *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998)

45.  After an employee has disclosed that she has a disability, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

46.  Rather than collaborate with Plaintiff or her doctor to find reasonable accommodation, Defendant chose to turn a blind eye and terminate Plaintiff.

47.  Defendant did not seek further clarification from either Plaintiff or her doctor and disregarded the medical evaluation altogether.

48.  The law requires an employer to see an explanation from the doctor if it had concerns with the employee's medical diagnosis. *Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1286 (7th Cir. 1996).

49.  The employer's conduct is actionable "if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013).

50.  An employer fails to engage in good faith when "the interactive process . . . was still ongoing when the employer terminated the worker's employment." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 336 (6th Cir. 2013)

51.  "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *King v. Steward Trumbull Meml. Hosp.*, Inc., 30 F.4th 551, 567 (6th Cir. 2022) (citing *Cutrera v. La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

6

52. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

53. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

    Respectfully Submitted,

    HURWITZ LAW PLLC

    /s/ *Noah S. Hurwitz*
    Noah Hurwitz (P74063)
    Attorneys for Plaintiff
    340 Beakes St., Ste. 125
    Ann Arbor, MI 48104
    (844) 487-9489
    noah@hurwitzlaw.com

Dated: May 4, 2023

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JERALDINE HARTSON,

        Plaintiff,

v.

COMPWEST INSURANCE
COMPANY,

        Defendant.

Case No. 1:23-cv-00197-JMB-PJG

Hon. Jane M. Beckering

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>HURWITZ LAW PLLC<br>*Attorneys for Plaintiff*<br>340 Beakes St. STE 125<br>Ann Arbor, MI 48104<br>(844) 487-9489<br>noah@hurwitzlaw.com | Scott R. Knapp (P61041)<br>Brandon C. Hubbard (P71085)<br>Jared A. Christensen (P83052)<br>DICKINSON WRIGHT PLLC<br>*Attorneys for Defendant*<br>123 W. Allegan Street, Suite 900<br>Lansing, MI 48933<br>(517) 371-1730<br>sknapp@dickinsonwright.com<br>bhubbard@dickinsonwright.com<br>jchristensen@dickinsonwright.com |

## **DEMAND FOR TRIAL BY JURY**

Plaintiff, Jeraldine Hartson, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

        Respectfully Submitted,
        HURWITZ LAW PLLC

        */s/ Noah S. Hurwitz*
        Noah S. Hurwitz (P74063)
        *Attorney for Plaintiff*

Dated: May 4, 2023